**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARY M. CLEARY, on behalf of herself and all others similarly situated (Address withheld pursuant to LCvR 5.1(c)(1)),<br><br>　　　　　Plaintiff,<br><br>v.<br><br>GEORGETOWN UNIVERSITY 3700 O Street NW Washington, D.C. 20057,<br><br>　　　　　Defendant. | Case No. 1:24-cv-2953<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Mary M. Cleary ("Plaintiff"), on behalf of herself and all others similarly situated, assert the following against Defendant Georgetown University ("Georgetown" or "Defendant"), based upon personal knowledge, where applicable, information and belief, and the investigation of counsel.

## INTRODUCTION

1.　　Plaintiff brings this Class Action Complaint against Defendant for its (i) failure to properly secure and safeguard Plaintiff's and Class Members' highly valuable, protected personal and academic information, including data relating to their academic performance, admissions, and financial aid, which included full names; Social Security numbers; tax ID numbers; dates of birth; genders; ethnicities; marital statuses; disability statuses; immigration and visa statuses; religions; financial aid information including, reports related to amounts and details of family marital and medical history, how much aid they had received from the university versus federal or other grants,

1

and how much of an unsubsidized loan a student had taken out for a semester; detailed information on every Georgetown student enrolled in the university's law, medical, graduate, and undergraduate programs' Spring 2024 GPA; rosters of all applicants to Georgetown undergraduate and graduate schools and their admittance and enrollment status; payroll of all university employees; and students' GRE and MCAT exam scores as well as their accompanying score percentiles (collectively "PII"); (ii) failure to comply with regulations and industry standards to protect information systems that contain PII; and (iii) unlawful disclosure of Plaintiff's and Class Members' PII.

2.      Defendant is one of the oldest universities in the United States, providing undergraduate and graduate academic and research offerings. Defendant offers degree programs in 48 disciplines and enrolls an average of approximately 7,500 undergraduate and 10,000 graduate students from more than 135 countries each academic year.

3.      As such, by virtue of providing its services, prospective students, students and alumni, all provided Defendant with highly sensitive information such as their financial aid information, Social Security numbers, GPA details, admission particulars and immigration information.

4.      According to Defendant's Chief Information Officer ("CIO"), Doug Little, on October 17, 2024, Defendant emailed those students and alumni impacted that a data breach had occurred "between the hours of 8 a.m. on Wednesday, October 16, to 8:30 a.m. on Thursday, October 17[, 2024]" "following a maintenance and outage period" "in the GU Experience platform, Georgetown's student information system," which "included sensitive personally identifiable and academic information." (the "Data Breach").

5.     According to a statement released by the Defendant, the data breach was the result of an "inadvertent setting change that allowed a subset of existing users with GU IDs to gain access to data that would otherwise only be used by administrative staff."

6.     Defendant has yet to fully and accurately inform those affected of the full extent of the Data Breach. It is not clear how many total victims of the Data Breach that Defendant thus far notified, however such information will be deduced through discovery.

7.     The Data Breach occurred as a result of Defendant's failures, including lax security protocols. These failures enabled unauthorized individuals to gain access to Defendant's systems and exfiltrate the PII of potentially hundreds of thousands of individuals, including their Social Security numbers, GPAs, financial aid information, disability and immigration status.

8.     Due to Defendant's security lapses, Georgetown users could log in to the "GU Experience," Georgetown's internal information platform, and use the sidebar to access an administrative version of the website. According to public reporting, the platform contained a page marked "Insights," which contained a folder named "Data-warehouse" containing multiple nesting folders containing spreadsheets with the PII.

9.     According to Defendant's public statements and in emails to Plaintiff and Class Members, an initial investigation revealed that "29 current or recent Georgetown students may have accessed the unauthorized information."

10.     The platform allowed any user to download and save this sensitive PII to their personal devices. The exfiltrated PII, therefore, remains in the hands of unauthorized individuals who accessed the PII and can exploit the PII of the Plaintiff and the Class Members.

11.     The Data Breach was a direct and proximate result of Defendant's flawed online system configuration and design and Defendant's failure to implement and follow basic security procedures.

12.     Because of Defendant's failures, unauthorized individuals were able to access and view Plaintiff's and Class Members' PII. Plaintiff's and Class Members' identities are now at risk due to Defendant's negligent conduct because the highly valuable PII that Defendant collected and maintained which has now been accessed, acquired, and viewed by unauthorized parties.

13.     As a result, the Plaintiff and Class Members are at substantially increased risk of future identity theft, both currently and for the indefinite future. Plaintiff's and Class Members' PII, including their Social Security numbers, that were compromised by as a result of Defendant's negligence in the Data Breach, is highly valuable because it is readily useable to commit fraud and identity theft. Plaintiff and Class Members are at the peril of suffering financial risks, including but not limited to criminals opening new financial accounts in Plaintiff's and Class Members' names, using the stolen PII to obtain governmental benefits, and filing false tax returns.

14.     Plaintiff and Class Members, on behalf of themselves and all others similarly situated, bring claims for negligence, negligence *per se*, breach of implied contract, and unjust enrichment, and declaratory and injunctive relief.

15.     As set forth in more detail below, Plaintiff has suffered harm because her personal information was compromised as a result of Defendant's negligence in implementing maintenance and setting changes which exposed her personal information to unauthorized individuals.

16.     Plaintiff seeks damage and injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit and identity theft

monitoring to all Class Members. Plaintiff also seeks to recover damages and other relief resulting from the Data Breach, including but not limited to, compensatory damages, and declaratory judgment and injunctive relief to mitigate future harms that are certain to occur in light of the scope of this Data Breach.

17.     Given that information relating to the Data Breach, including the systems that were impacted and the configuration and design of Defendant's website and systems, remain exclusively in Defendant's control, Plaintiff anticipates additional support for their claims will be uncovered following a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d)(2), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative Members of the Class defined below, and a significant portion of putative Class Members are citizens of a different state than Defendant.

19.     This Court has personal jurisdiction over Defendant because its principal place of business is in this District, Defendant is a university in Washington, District of Columbia and conducts substantial business in this District, and a substantial portion of the violations, acts, and omissions giving rise to this action occurred in this District.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant's principal place of business is in this District, Defendant does business in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

### A. Plaintiff

21.     Plaintiff Mary M. Cleary ("Plaintiff") is a citizen and resident of the Commonwealth of Virginia.

22.     On October 17, 2024, Plaintiff received a notification email from the Defendant's CIO, alerting her that her "sensitive personally identifiable and academic information" had been compromised in the Data Breach. The email stated that following a period of "maintenance and outage," certain unauthorized parties were able to "gain access to data that would otherwise only be used by administrative staff."

23.     Upon further review and information, Plaintiff's PII has been compromised as a result of the Data Breach.

24.     Plaintiff is a graduate of Defendant and part of their alumni network. Plaintiff provided Defendant her PII in course of receiving her education at Defendant.

### B. Defendant

25.     Defendant Georgetown University ("Defendant") is a private research university in Washington, D.C., with its principal place of business at 3700 O Street NW, Washington, D.C. 20057.

26.     Defendant is one of the oldest universities in the United States and has eleven undergraduate and graduate schools, admitting approximately 7,500 undergraduate and 10,000 graduate students each academic year.

27.     Defendant offers degree programs in forty-eight disciplines including academic and research offerings. Georgetown's alumni network consists of hundreds of thousands of individuals.

28.    As part of its operations, the Defendant collects valuable PII from prospective students, students, and alumni such as the Plaintiff and Class Members.

## BACKGROUND

### I.    Defendant Obtains, Collects, and Stores PII

29.    Defendant is in complete operation, control, and supervision of its systems, and configured and designed its systems without adequate data security protections.

30.    Defendant was entrusted with safely securing and safeguarding Plaintiff's and Class Members' PII.

31.    Defendant did not properly verify, oversee, and supervise its entrustment of Plaintiff's and Class Members' PII. The information held by Defendant included unencrypted PII, a bulk of which was collected from Plaintiff and Class Members as part of receiving education or applying to receive education at Georgetown and was submitted with an understanding that it would be kept safe, confidential and private.

32.    Plaintiff and Class Members reasonably expect that a university like the Defendant, who is entrusted with highly confidential information, will use the utmost care to keep their PII confidential and securely maintained, to use this information for authorized purposes only, and to make only authorized disclosures of this information.

33.    Despite collecting and storing such sensitive PII, Defendant failed to properly implement updates and maintenance as a result of which, unauthorized access to Plaintiff's and Class Members' PII was freely granted to all on its GU Experience Platform.

34.    The negligence in operating and maintaining its systems caused unauthorized parties to be able to access spreadsheets of personal information containing, among other data points, students' full names, tax IDs, dates of birth, gender, ethnicity, marital status, disability

status, immigration and visa status and religion while some other sheets contained financial aid information for students dating back to the 1990s, including comments university staff made on students' financial aid reports related to financial aid amounts and details of family marital and medical history.

35.     The data included specific details of students' financial aid, such as how much aid they had received from the university versus federal or other grants and how much of an unsubsidized loan a student had taken out for a semester.

36.     Had Defendant followed applicable laws, regulations, and industry guidelines, and adopted reasonable security measures including proper protocol and guidelines on how to safeguard PII during scheduled maintenances, Defendant would have prevented the unauthorized disclosure into its information systems and, ultimately, the exposure of Plaintiff's and Class Members' PII.

## II.     FTC Guidelines

37.     Defendant is prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act"), from engaging in "unfair or deceptive acts or practices in or affecting commerce." The U.S. Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

38.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

39.     The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no

longer needed, encrypt information stored on networks, understand their network's vulnerabilities, and implement policies to correct any security problems.

40.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

41.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

42.     Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures and to properly conduct scheduled maintenance allowed unauthorized access to PII, or to prevent the disclosure of such information to unauthorized individuals, as reflected by the sensitive Social Security numbers and other PII stolen, constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

43.     Defendant was always fully aware of its obligations to protect the PII of consumers, such as Plaintiff and Class Members, because of its business of obtaining, collecting, and disclosing PII as well as collecting, storing, and using other confidential personal and financial information as part of its operations as a university. Defendant was also aware of the significant repercussions that would result from its failure to do so.

## SUBSTANTIVE ALLEGATIONS

I.      **The Data Breach**

44.     On or around October 16-17, 2024, Plaintiff's and Class Members' sensitive PII was compromised.

45.     Through an email sent to Plaintiff and Class Members, Defendant, through its CIO, announced that between the hours of 8:00 a.m. on Wednesday, Oct. 16 and 8:30 a.m. on Thursday, Oct. 17, 2024,[1] the sensitive personally identifiable and academic information from current and former students was accessed by unauthorized individuals following a maintenance and outage period in the GU Experience platform, Georgetown's student information system.

46.     According to a statement released by the Defendant, the Data Breach occurred during "maintenance and outage period" of the "Banner" student information system.

47.     Ellucian operates "Banner," a software application used by higher education institutions, including Defendant, to maintain student, alumni, and faculty information including financial data. Banner is used by thousands of educational institutions worldwide.

48.     According to a statement released by the Defendant, the Data Breach occurred after a scheduled "maintenance and outage period" caused by an "inadvertent setting change."

49.     Defendant began notifying affected students and alumni during the afternoon of October 17, 2024.

---

[1] According to an email from Defendant's CIO to the student publication, *The Georgetown Voice*, the data breach "occurred after a scheduled maintenance period *from 4:00 p.m. on Friday, October 11* to 8:00 a.m. on Wednesday, October 16," which was "part of ongoing efforts to modernize the Georgetown network environment."

50.     Critically, Defendant has not been fully forthcoming with what particular forms of "sensitive personally identifiable and academic information" were exposed, and the scope of the Data Breach appears larger than what Defendant initially publicized.

51.     Subsequently, reports in Georgetown's student newspaper publication, "*The Hoya*" emerged providing further details on the unauthorized disclosure of Plaintiff's and Class Members' PII.

52.     *The Hoya* reported that individuals could access the exposed data with a Georgetown login, which and allowed users to download and save this information to their personal devices.

53.     Showcasing, the sensitive nature of the PII exposed, data reviewed by *The Hoya* included both graduates' personal information and information about their time as Georgetown students, including data relating to their academic performance, admissions, financial aid and Social Security and tax ID numbers.

54.     For example, information *The Hoya* viewed in one spreadsheet included personal information on students' full names, tax IDs, dates of birth, genders, ethnicities, marital statuses, disability statuses, immigration and visa statuses and religions.

55.     Other spreadsheets reviewed by the *The Hoya* contained financial aid information for students dating back to the 1990s, including comments university staff made on students' financial aid reports related to financial aid amounts and details of family marital and medical history. The data included specific details of students' financial aid, such as how much aid they had received from the university versus federal or other grants and how much of an unsubsidized loan a student had taken out for a semester.

56.     Another spreadsheet reviewed by *The Hoya* included GPA information of students dating back to the '90s, while another included detailed information on every Georgetown student enrolled in the university's law, medical, graduate and undergraduate programs' Spring 2024 GPA.

57.     One file reviewed by *The Hoya* also included a roster of all applicants to Georgetown undergraduate and graduate schools and their admittance and enrollment status. Another file included the payroll of all university employees, though users could not directly access this dataset. Other files included students' GRE and MCAT exam scores as well as their accompanying score percentiles.

58.     According to an email Defendant's CIO sent to graduates early in the afternoon on October 17, only "student data" was available to unauthorized users. However, Defendant has clarified and said that "student data" in this email referred to data relating to a person's time as a student from application for admission to the university until graduation.

59.     As a result of the Data Breach, Plaintiff spent time and effort researching the Data Breach, reviewing and monitoring her accounts for fraudulent activity, and dealing with increased spam and phishing attempts via email and telephone calls using the information taken in the Data Breach. Plaintiff spent time researching the Data Breach to confirm that her PII has been compromised.

60.     The Data Breach has caused the Plaintiff to suffer anxiety and stress from concerns that she faces an increased risk of financial fraud, identity theft, fraud and other types of monetary harm as a result of the stolen information. Plaintiff places significant value in the security of her PII and the confidentiality of the personal information entrusted to the Defendant.

61.     Plaintiff and Class Members suffered actual damages as a result of the failures of Defendant to adequately protect the sensitive information entrusted to it, including, without

limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, tax and medical fraud, the loss in value of their PII, the loss of confidentiality of the financial information and other economic and non-economic harm. Plaintiff and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identity theft.

62.     As a result of the Data Breach, Plaintiff has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach. As mentioned above, Plaintiff also continues to suffer from anxiety and fear of financial fraud and identity theft.

**II.     Defendant's Obligation to Secure and Protect Students and Alumni's PII**

63.     Defendant has an obligation to secure and protect the PII of its students and alumni, which contains sensitive personal information such as Social Security numbers, tax ID information, as well as academic and admissions information, as well as familial and religious information.

64.     Defendant's internal "Data Classification" system (UIS.401.3 Data Handling Guidelines) classifies data such as personally identifiable information, Social Security numbers, dates of birth, personal contact information, student records, and student admission data as "High" security data such that "[t]he loss of its confidentiality, integrity, or availability would cause significant harm to Georgetown's mission, security, finances, or reputation."

65.     Defendant's Data Handling Guidelines directs university employees to maintain extra care for these records through secure platforms and printing services.

66.     According to Defendant's Data Handling Guidelines, university employees cannot store this data on their work or personal computers: These records must remain in the university's authorized storage system and be destroyed or purged after it is no longer in use. Here, there was data that was exposed dating back to the 1990's which Defendant should have purged and destroyed years ago.

67.     Further, under the federal Family Educational Rights and Privacy Act of 1974 ("FERPA"), as an educational institution, Defendant may not release information about current or former students without the student's written consent, other than certain "directory information," which includes names, addresses, contact information for students and their family and information at their time at Georgetown.

### III.    Defendant's Data Security Failures Caused the Data Breach

68.     Up to, and including, the period when the Data Breach occurred, Defendant breached its duties, obligations, and promises to Plaintiff and Class Members, by its failure to:

   a.  properly monitor its systems, including its GU Experience platform, known as Ellucian Banner;

   b.  properly conduct maintenance and updates on its systems, including setting changes, on its Banner student information system;

   c.  hire qualified personnel and maintain a system of accountability over data security, thereby knowingly allowing data security deficiencies to persist;

   d.  properly train its employees about maintaining Defendant's systems, safely modernize Georgetown's network, various platform settings, including by failing to implement adequate security awareness training that would have instructed

employees about the risks of common techniques, what to do if they suspect such data breaches, and how to prevent them;

e.  address well-known warnings that its systems and servers were susceptible to a data breach;

f.  implement certain protocols, including multiple warnings while implementing a setting change, that would have prevented a breach of personal information and otherwise would have protected their sensitive personal information;

g.  install software to adequately track access to its network and monitor the network for unusual activity, and prevent exfiltration of data, and prevented individual's sensitive PII from being stolen; and

h.  adequately safeguard individual's sensitive PII and maintain an adequate data security environment to reduce the risk of a data breach or unauthorized disclosure.

## IV.  Defendant's Data Security Failures Constitute Unfair and Deceptive Practices and Violations of Consumers' Privacy Rights

69.  The FTC deems the failure to employ reasonable and appropriate measures to protect against unauthorized access to sensitive personal information an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

70.  In 2007, the FTC published guidelines that establish reasonable data security practices for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems. The guidelines also recommend that businesses consider using an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone may be

trying to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

71.     The FTC has also published a document entitled "FTC Facts for Business," which highlights the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.

72.     The FTC has issued orders against businesses that have failed to employ reasonable measures to secure sensitive personal information. These orders provide further guidance to businesses regarding their data security obligations.

73.     Prior to the Data Breach, and during the breach itself, Defendant failed to follow guidelines set forth by the FTC and actively mishandled the management of its IT security.

74.     Furthermore, by failing to have reasonable data security measures in place, Defendant engaged in an unfair act or practice within the meaning of Section 5 of the FTC Act.

## V.     The Value of the Disclosed PII and Effects of Unauthorized Disclosure

75.     Defendant understood the protected PII it acquires, stores, and utilizes is highly sensitive and of significant value to the owners of the PII, its students and alumni, and those who would use it for wrongful purposes.

76.     PII is a valuable commodity to identity thieves, particularly when it is aggregated in large numbers.

77.     Sensitive personal information commonly stolen in data breaches has economic value. The purpose of stealing large caches of personal data is to use it to defraud individuals or to place it for illegal sale and to profit from other criminals who buy the data and use it to commit fraud and identity theft. Indeed, stolen personal information is routinely posted on anonymous

websites, making the information widely available to a criminal underworld. There is an active and robust market for this information.

78.     By accessing an individual's personal information, bad actors can cause upheaval in the individual's life. They could withdraw funds from the bank accounts, get new credit cards or loans, lock the individual out of their own bank accounts or social media accounts, file false tax returns and destroy their credit score.

79.     Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity. Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

80.     The forms of PII involved in this Data Breach are particularly concerning. Unlike credit or debit card numbers in a payment card Data Breach—which can quickly be frozen and reissued in the aftermath of a breach—unique Social Security and tax ID numbers cannot be easily replaced. Even when such numbers are replaced, the process of doing so results in a major inconvenience to the subject person, requiring a wholesale review of the person's relationships with government agencies and any number of private companies in order to update the person's accounts with those entities.

81.     The Social Security Administration ("SSA") warns that the process of replacing a Social Security number is a difficult one that creates other types of problems, and that it will not be a panacea for the affected person:

> Keep in mind that a new number probably will not solve all your
> problems. This is because other governmental agencies (such as the

IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.

If you receive a new Social Security Number, you should not be able to use the old number anymore.

For some victims of identity theft, a new number actually creates new problems. If the old credit information is not associated with your new number, the absence of any credit history under the new number may make more difficult for you to get credit.

82.     Social Security numbers allow individuals to apply for credit cards, student loans, mortgages, and other lines of credit—among other services. Often Social Security numbers can be used to obtain medical goods or services, including prescriptions. They are also used to apply for a host of government benefits. Access to such a wide range of assets makes Social Security numbers a prime target for cybercriminals and a particularly attractive form of PII to steal and then sell.

83.     The ramifications of Defendant's failure to keep Plaintiff's and Class Members' PII secure are long lasting and severe.

84.     To avoid detection, identity thieves often hold stolen data for months or years before using it.

85.     Thus, Defendant knew, or should have known, the importance of safeguarding the PII entrusted to it and of the foreseeable consequences if the PII was disclosed or unauthorizedly released. Defendant failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

86.     As a highly sophisticated entity that handles sensitive PII, Defendant failed to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure the security and confidentiality of Plaintiff's and other Class Members' PII to protect against anticipated threats of intrusion of such information.

87.     Identity thieves use stolen PII for various types of criminal activities, such as when personal and financial is used to commit fraud or other crimes, including credit card fraud, phone or utilities fraud, bank fraud and government fraud.

88.     The PII exfiltrated in the Data Breach can also be used to commit identity theft by placing Plaintiff and Class Members at a higher risk of "phishing," "vishing," "smishing," and "pharming," which are which are other ways for cybercriminals to exploit information they already have in order to get *even more* personally identifying information from a person through unsolicited email, text messages, and telephone calls purportedly from a legitimate company requesting personal, financial, and/or login credentials.

89.     There is often a lag time between when fraud occurs versus when it is discovered, and also between when PII is stolen and when it is used.

90.     According to the U.S. Government Accountability Office, which conducted a study regarding Data Breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

91.     PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black market for years.

92.     Plaintiff and Class Members rightfully place a high value not only on their PII, but also on the privacy of that data.

93.     Thus, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

**VI.     The Data Breach Damaged Plaintiff and the Class Members**

94.     According to research, sensitive PII can sell for as much as $363 per record.[2] As a result of the Data Breach, Plaintiff's and Class Members' PII, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the PII is now readily available, and the rarity of the PII has been lost, thereby causing additional loss of value.

95.     As a result of Defendant's deficient security measures, Plaintiff and Class Members are also under a constant threat of their PII being used by criminals for identify theft and other fraud-related crimes.

96.     Plaintiff and Class Members face a substantial and imminent risk of fraud and identity theft as their names have now been linked with their Social Security numbers, date of birth, and physical addresses, among other data identifiers as a result of the Data Breach. These specific types of information are associated with a high risk of fraud.

---

[2] *See, e.g.*, John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

97.     Many Class Members will also incur out of pocket costs for protective measures such as identity theft protection, credit monitoring fees, credit report fees, credit freeze fees, fees for replacement cards, and similar costs related to the Data Breach.

98.     Plaintiff and Class Members also suffered a "loss of value" of their sensitive PII when it was exfiltrated in the Data Breach. A robust market exists for stolen PII. Cybercriminals sell PII on the dark web—an underground market for illicit activity, including the purchase of hacked PII—at specific identifiable prices. This market serves as a means to determine the loss of value to Plaintiff and Class Members.

99.     Identity thieves can also combine data stolen in the Data Breach with other information about the Plaintiff and Class Members gathered from underground sources, public sources, or even Plaintiff's and Class Members' social media accounts. Thieves can use the combined data to send highly targeted phishing emails to Plaintiff and Class Members to obtain more sensitive information. Thieves can use the combined data to commit potential crimes, including opening new financial accounts in Plaintiff's and Class Members' names, taking out loans in Plaintiff's and Class Members' names, using Plaintiff's and Class Members' information to obtain government benefits, filing fraudulent tax returns using Plaintiff's and Class Members' information, obtaining Social Security numbers in Plaintiff's and Class Members' names but with another person's photograph.

100.     Plaintiff and Class Members have spent and will continue to spend substantial amounts of time monitoring their accounts for identity theft and fraud and the opening of fraudulent accounts, disputing fraudulent transactions, and reviewing their financial affairs more closely than they otherwise would have done but for the Data Breach. These efforts are

burdensome and time-consuming, especially because Defendant has disclosed little information about the Data Breach, forcing customers to continue to monitor their accounts indefinitely.

101.    A victim whose personal information has been stolen or compromised may not see the full extent of identity theft or fraud until long after the initial breach.

102.    The risk of identity theft and fraud will persist for years. Identity thieves often hold stolen data for months or years before using it to avoid detection. Stolen PII that is freely available on the dark web which may be used at any time by cybercriminals, including after many months or more to target Plaintiff and the Class Members. Thus, Plaintiff and Class Members must vigilantly monitor their financial accounts *ad infinitum*.

## CLASS ACTION ALLEGATIONS

103.    Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following Nationwide Class:

> All persons in the United States whose PII was compromised in the Data Breach made public by Georgetown University in October 2024 (the "Nationwide Class").

104.    Excluded from the Class are Defendant, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

105.    Plaintiff reserves the right to modify, expand or amend the above Class definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

106.     Certification of Plaintiff's claims for class-wide treatment are appropriate because all elements of Fed. R. Civ. P. 23(a) and (b)(2)-(3) are satisfied. Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

107.     **Numerosity**. All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied. The Members of the Class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. There are likely hundreds of thousands of Members of the Class since scope of the information exposed in the Data Breach, in some instances, dates back to the 1990s, and Defendant purports to have approximately 240,000 alumni. Although, the precise number of Class Members is unknown to Plaintiff it will be revealed through discovery in due course.

108.     Class Members may be identified through objective means. Class Members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

109.     **Commonality and Predominance**. All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

   a.   Whether Defendant engaged in active misfeasance and misconduct alleged herein;

   b.   Whether Defendant owed a duty to Plaintiff and Class Members to safeguard their sensitive PII;

   c.   Whether Defendant breached its duty to Plaintiff and Class Members to safeguard their sensitive PII;

   d.   Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

e. Whether Defendant acted negligently in implementing the system updates and performing scheduled maintenance;

f. Whether Plaintiff and Class Members suffered legally cognizable damages as a result of the Data Breach;

g. Whether Defendant's failure to provide adequate security proximately caused Plaintiff's and Class Members' injuries; and

h. Whether Plaintiff and Class Members are entitled to declaratory and injunctive relief.

110. **Typicality.** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiff's claims are typical of the claims of all Class Members because Plaintiff, like other Class Members, suffered theft of her sensitive personal information in the Data Breach.

111. **Adequacy of Representation.** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiff is an adequate Class representative because she is a Member of the Class and his interests do not conflict with the interests of other Class Members that they seek to represent. Plaintiff is committed to pursuing this matter for the Class with the Class's collective best interest in mind. Plaintiff has retained counsel competent and experienced in complex class action litigation of this type and Plaintiff intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the Class's interests.

112. **Predominance and Superiority.** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiff's case will also resolve them for the Class's claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by the Plaintiff and other Class Members are relatively small compared to the burden and expense that would be

required to individually litigate their claims against Defendant, so it would be impracticable for Members of the Class to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

113.    **Cohesiveness**. All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Defendant has acted, or refused to act, on grounds generally applicable to the Class such that final declaratory or injunctive relief is appropriate.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE

114.    Plaintiff re-alleges and incorporates by reference all of the allegations contained above as if fully set forth herein.

115.    Defendant obtained Plaintiff's and Class Members' PII. Upon information and belief, Defendant collects the highly sensitive PII in course of running the university and providing education related services to students and alumni.

116.    By collecting and storing sensitive PII, Defendant had a common law duty of care to use reasonable means to secure and safeguard the sensitive personal information and to prevent disclosure of the information to unauthorized individuals. Defendant's duty included a responsibility to implement processes by which it could detect a Data Breach of this type and magnitude in a timely manner.

117.    Defendant owed a duty of care to the Plaintiff and Class Members to provide data security consistent with the various statutory requirements, regulations, and other notices described above.

118.    Defendant was subject to an "independent duty" untethered to any contract between the Plaintiff and Class Members and Defendant.

119.    Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' valuable and sensitive PII.

120.    Defendant's negligent acts and omissions include, but are not limited to, the following:

    a.  failure to employ systems and educate employees to protect against unauthorized disclosure;

    b.  failure to comply with industry standards for software and server security;

    c.  failure to properly update its systems when conducting scheduled maintenance;

    d.  failure to prohibit access to unauthorized persons on its GU Experience platform and Banner student information system;

    e.  failure to track and monitor access to its network;

    f.  failure to limit access on its systems to only those with a valid purpose;

    g.  failure to adequately staff and fund its data security operation;

    h.  failure to comply with the FTC Act;

    i.  failure to comply with FERPA;

    j.  failure to purge, remove, delete, or destroy highly sensitive personal information of individuals that is no longer being used for any valid business purpose;

    k.  failure to use due care in hiring, promoting, and supervising those responsible for its data security operations; and

    l.  failure to recognize that unauthorized individuals were accessing, downloading, and stealing PII from its network while the Data Breach was taking place; and

m.  failure to oversee the entrustment of PII.

121.    It was foreseeable to Defendant that a failure to use reasonable measures to protect sensitive PII could result in injury to its students, including Plaintiff and the Class Members. Further, actual and attempted breaches of data security were reasonably foreseeable to Defendant given the known frequency of data breaches and various warnings from industry experts.

122.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have been injured as alleged herein. Plaintiff and Class Members are entitled to damages, including actual, compensatory, punitive, and nominal damages suffered because of the Data Breach in an amount to be proven at trial.

123.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class Members.

## COUNT II
## NEGLIGENCE *PER SE*

124.    Plaintiff re-alleges and incorporates by reference all of the allegations contained above as if fully set forth herein.

125.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as Defendant for failing to use reasonable measures to protect sensitive PII.

126.    Various FTC publications and orders also form the basis of Defendant's duty.

127.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with the industry standards. Defendant's conduct was particularly

unreasonable given the nature and amount of PII it obtained and disclosed and the foreseeable consequences of a Data Breach.

128.    Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

129.    Moreover, the harm that has occurred is the type of harm that the FTC Act was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

130.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have been injured as alleged herein. Plaintiff and Class Members are entitled to damages, including actual, compensatory, punitive, and nominal damages suffered because of the Data Breach in an amount to be proven at trial.

131.    Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

132.    Plaintiff's and Class Members are also entitled to injunctive relief requiring Defendant to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class Members.

## COUNT III
## BREACH OF IMPLIED CONTRACT

133.    Plaintiff re-alleges and incorporates by reference all of the allegations contained above as if fully set forth herein.

134.    Defendant entered into contracts, including with Plaintiff and Class Members in course of Plaintiff and Class Members applying to and enrolling in Georgetown in course of their education.

135.    Plaintiff and Class Members provided consideration to Defendant in the form of tuition and other fees in order to receive their education.

136.    Plaintiff and Class Members were required to provide their PII to Defendant as part of applying and enrolling as a student at Defendant.

137.    By providing their PII and upon Defendant's acceptance of this information, Plaintiff and the Class, on one hand, and Defendant, on the other hand, entered into contracts for the provision of data security, separate and apart from any express contract entered into between the parties.

138.    In exchange, Defendant agreed, in part, to implement adequate security measures to safeguard the PII of Plaintiff and the Class and to timely and adequately notify them of the Data Breach.

139.    These contracts were made expressly for the benefit of the Plaintiff and the Class, as Plaintiff and Class Members were the intended beneficiaries of the contracts entered into between Defendant and its students. Defendant knew that, if it were to breach these contracts with students, then its students, like the Plaintiff's and Class Members—would be harmed.

140.    The implied contracts between Defendant and Plaintiff and Class Members obligated Defendant to take reasonable steps to secure, protect, safeguard, and keep confidential Plaintiff's and Class Members' PII. The terms of these implied contracts are described in federal laws, state laws, and industry standards, as alleged above.

141.    Upon information and belief, Plaintiff and Class Members were the express, foreseeable, and intended beneficiaries of valid and enforceable contracts between Defendant and applicants, students, and alumni that included obligations to protect, safeguard, and keep secure the PII of the Plaintiff and Class Members.

142.    Defendant was required to implement the necessary security measures to safeguard the PII of Plaintiff and Class Members and not take unjustified risks when storing the PII.

143.    Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws, regulations, and industry standards.

144.    Defendant breached these implied contracts by failing to take, develop and implement adequate policies and procedures to safeguard, protect, and secure the PII belonging to Plaintiff and Class Members, and allowing unauthorized persons to access Plaintiff's and Class Members' PII.

145.    As a direct and proximate result of Defendant's breaches of the implied contracts, Plaintiff and Class Members have been damaged as described herein, will continue to suffer injuries as detailed above due to the continued risk of exposure of PII and are entitled to damages in an amount to be proven at trial.

146.    Plaintiff and Class Members were harmed by Defendant's conduct as a direct and proximate result of Defendant's breach of its contracts with its students and are entitled to the damages they have sustained. Plaintiff and Class Members are entitled to damages, including actual, compensatory, punitive, and nominal damages suffered because of the Data Breach in an amount to be proven at trial.

147.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class Members.

## <u>COUNT IV</u>
## UNJUST ENRICHMENT

148.    Plaintiff re-alleges and incorporates by reference all of the allegations contained above as if fully set forth herein.

149.    Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of PII, and also paid monies to Defendant to avail themselves of Defendant's education related services.

150.    Defendant accepted or knew that Plaintiff and Class Members conferred a monetary benefit to Defendant, and accepted and retained those benefits by accepting and retaining the PII entrusted to it. Defendant profited from Plaintiff's and Class Members' retained data and used Plaintiff's and Class Members' PII in the course of its operations.

151.    The monies paid to Defendant were supposed to be used by Defendant, in part, to pay for and oversee adequate data privacy infrastructure, practices, and procedures.

152.    In equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff's and Class Members because Defendant failed to oversee, implement, or adequately implement, the data privacy and security practices and procedures that Plaintiff and the Class Members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

153.    As a result of Defendant's conduct, Plaintiff's and Class Members have been injured as alleged herein.

154.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged herein.

155.    Plaintiff and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pled.

## COUNT V
## DECLARATORY AND INJUNCTIVE RELIEF

156.    Plaintiff re-alleges and incorporates by reference all of the allegations contained above as if fully set forth herein.

157.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the statutes described in this Complaint.

158.    An actual controversy has arisen in the wake of the Data Breach regarding Defendant's present and prospective common law and statutory duties to reasonably safeguard Plaintiff's and Class Members' sensitive PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff's and Class Members from further data breaches. Plaintiff alleges that Defendant's data security practices remain inadequate.

159.    Plaintiff and Class Members continue to suffer injury as a result of the compromise of their sensitive PII and remain at imminent risk that further compromises of their PII will occur in the future.

160.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Defendant continues to owe a legal duty to secure Plaintiff's and Class Members' sensitive PII, to timely notify consumers of any Data Breach, and to establish and implement data security measures that are adequate to secure Plaintiff's and Class Members' sensitive PII.

161.    The Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect consumers' sensitive PII.

162.    If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, for which they lack an adequate legal remedy. The threat of another Data Breach is real, immediate, and substantial. If another data breach occurs, Plaintiff and Class Members will not have an adequate remedy at law, because not all of the resulting injuries are readily quantified, and they will be forced to bring multiple lawsuits to rectify the same conduct.

163.    The hardship to the Plaintiff and Class Members if an injunction does not issue greatly exceeds the hardship to Defendant if an injunction is issued. If another Data Breach occurs, Plaintiff and the Class Members will likely be subjected to substantial identify theft and other damages. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

164.    Issuance of the requested injunction will serve the public interest by preventing another Data Breach at Defendant, thus eliminating the additional injuries that would result to Plaintiff and the thousands of individuals whose confidential information would be further compromised.

## **REQUEST FOR RELIEF**

Plaintiff, on behalf of all others similarly situated, requests that the Court enter judgment against Defendant including the following:

A.    Determining that this matter may proceed as a class action and certifying the Class asserted herein;

B.      Appointing the Plaintiff as representatives of the applicable Class and and/or subclass and appointing Plaintiff's counsel as Class Counsel;

C.      An award to Plaintiff and the Classes of damages, including actual, compensatory, punitive, and nominal damages as set forth above;

D.      Disgorgement into a common fund for the benefit of the Plaintiff and Class Members all unlawful or inequitable proceeds received by Defendant as a result of the conduct and Data Breach as set forth above;

E.      Ordering injunctive relief requiring Defendant to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; (iii) provide several years of free credit monitoring and identity theft insurance to all Class Members; and (iv) timely notify individuals of any future data breaches;

F.      Entering a declaratory judgment stating that Defendant owes a legal duty to secure Plaintiff's and Class Members' sensitive PII, to timely notify its clients and any person or business entity of any data breach, and to establish and implement data security measures that are adequate to secure sensitive personal information;

G.      An award of attorneys' fees, costs, and expenses, as provided by law or equity;

H.      An award of pre-judgment and post-judgment interest, as provided by law or equity; and

I.      Such other relief as the Court may allow.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Dated: October 18, 2024

Respectfully submitted,

*/s/ Anthony M. Christina*

Christian Levis
D.D.C. Bar ID: NY0416
Peter Demato (*pro hac vice* forthcoming)
Radhika Gupta (*pro hac vic*e forthcoming)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
clevis@lowey.com
pdemato@lowey.com
rgupta@lowey.com

Anthony M. Christina
D.D.C. Bar ID: 230743
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Tel: (215) 399-4770
achristina@lowey.com

*Counsel for Plaintiff Mary M. Cleary and
the Proposed Class*